BRUGER, Respondent, vs. PRINCETON & ST. MARIE MUTUAL FIRE INSURANCE COMPANY, Appellant.

*September 11—October 9, 1906.*

(1) *Trial: Legal and equitable issues.* (2) *Evidence: Admissions: Conclusiveness.* (6) *Verified copies, when receivable.* (3, 5–7) *Insurance against fire: Notice of other insurance: Amount of recovery: Instructions to jury: Evidence of value: Policy inconsistent with by-laws of insurer.*

1. Where in an action on contract facts properly pleadable as a defense at law were so pleaded and were also pleaded as an equitable counterclaim for rescission, and trial of the legal issue resulted in a general verdict for plaintiff, there was no material error in granting a motion for judgment on the verdict before formally disposing of the counterclaim by findings against the defendant.

2. An unqualified admission of a party against his interest does not preclude sending the issue involved to the jury where there is credible evidence fairly conflicting therewith.

3. The question whether, when an insurance policy was issued, the company was notified of existing insurance on the property, is *held,* on the evidence, to have been properly one for the jury.

4. In an action upon a fire insurance policy the court charged that in case plaintiff recovered he was entitled to recover twelve nineteenths of the value of the house destroyed, but not to exceed $1,200; three eighths of the value of the furniture, but not to exceed $75; two thirds of the value of the wearing apparel, but not to exceed $50, and the value of the provisions, but not to exceed $50. There was no question that the limit of legitimate recovery for the provisions was two thirds of $19.21, and it does not appear that the jury allowed a greater amount therefor. *Held,* that the instruction as to the provi-

sions was not prejudicially erroneous, since the jury must have understood that they were to allow only two thirds of their value.

5. Sworn proofs of loss were received in evidence, and plaintiff testified that the statements therein as to the value of the personal property destroyed were correct. There was no objection to this evidence on the ground that it was not directed to, market value, and no cross-examination showing that it was not so directed. *Held*, that this evidence was sufficient to take the case to the jury on the question of value.

6. A verified copy of a paper is not necessarily receivable in evidence merely because the original is beyond the jurisdiction of the court. There should be, at least, some fair showing of efforts to obtain the use of the original, unless it is clear that they would have been fruitless.

7. In the absence of statutory prohibition or some rule of public policy to the contrary, a contract of insurance, whether made with a mutual or other company, will prevail over provisions in the articles of organization or by-laws of the insurer inconsistent therewith.

APPEAL from a judgment of the circuit court for Green Lake county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Action to recover $1,375 on a policy of fire insurance. The complaint was in the usual form. Defendant answered admitting the execution and delivery of the policy but claiming that it was void because the occurrence was produced by false representations of the plaintiff of facts material to the risk, which falsity was not known to the assurer till after the loss occurred. The answer also put in issue the allegations of the complaint as to the interest of plaintiff in the property; also as to the amount of loss sustained and as to giving notice of loss as required by the contract. Defendant pleaded, particularly, that when the policy was applied for plaintiff represented that the cost and value of the dwelling house was $1,800, whereas the value did not exceed $950; that it was expressly agreed that defendant should not be liable for more than two thirds of the cash value of any building insured, and that not more than two thirds of the cash value of any building would be insured by the company, which was well

known to the plaintiff; that at the time application for the insurance was made plaintiff falsely and fraudulently represented to defendant that there was no existing insurance on the property, while in truth there was such insurance to the amount of $1,200, $700 being on the dwelling house, $100 on the household furniture, $25 on beds and bedding, $25 on family wearing apparel, $25 on provisions, and $325 on other items, said insurance being in the Insurance Company of the State of Illinois; that no notice of such existing insurance was given to the defendant, and that such circumstance of existing insurance and that no notice was given to the defendant rendered the policy void by its terms. Defendant further answered that in furtherance of the fraud attempted as aforesaid, after the loss occurred, plaintiff delivered to the defendant a paper wherein he falsely swore that the dwelling house was worth $1,800, whereas it was only worth $950.

The facts aforesaid pleaded to defeat the policy on the ground of fraud were set forth as a counterclaim for rescission. The counterclaim was duly replied to. The jury rendered a general verdict in favor of the plaintiff. Proper motions and exceptions were taken to raise the questions discussed in the opinion.

The equitable issue raised by the counterclaim, after the court granted plaintiff's motion for judgment, was in form closed by findings of fact to the effect that the allegations of fraud were untrue; that there was insurance on the plaintiff's property when the policy in question was taken out, and that defendant was duly informed thereof; that plaintiff represented the dwelling house to have cost $1,800, and that it in fact cost that sum. Judgment was accordingly entered upon the verdict.

For the appellant there were briefs by *George B. Heaney* and *Thompson, Thompson & Pinkerton,* and oral argument by *J. C. Thompson.*

For the respondent the cause was submitted on the brief of *Perry Niskern.*

MARSHALL, J.  Some complaint is made respecting the manner in which the court disposed of the cause of action set forth by way of counterclaim for a rescission of the contract of insurance.  All the facts in regard thereto were properly pleadable as a defense at law, were so pleaded, and the issues raised in respect thereto were tried and closed by the verdict of the jury.  Such being the case it does not seem necessary to consider any question as to the equitable defense.

It is undisputed that the contract of insurance, unless appellant was notified when it was made of the then existing insurance on the property, was void under the provisions thereof on that subject.  The issue as to that was submitted to the jury by the court and the finding was in respondent's favor.  Appellant's counsel claim that the evidence is conclusive that no notice of the existing insurance was given to the company and therefore that the verdict should have been set aside and a new trial granted, as requested.

The evidence as to the existing insurance is substantially as follows: Respondent applied to Mr. Hardell, secretary of the appellant, for insurance, who introduced him to Mr. Swanke, its agent, through whom the policy was obtained. Both Hardell and Swanke testified, unequivocally, that respondent said to them that he had no insurance on the property; that there had been some but that it had run out.  Respondent when first examined on the trial testified that he told such agent that he had insurance for one half the amount with a Mr. Schumekosky, through whom he obtained a loan. On redirect examination, later, he said he told the agent that the previous insurance had run out.  When examined under sec. 4096, Stats. 1898, before trial, he said he told Hardell that he had taken out insurance but "it run out, I don't know when," and he said to the agent in answer to the question as to whether there was insurance on the property, "Yes, it run out I don't know when, it will run out I don't know when, or may have run out I don't know when."  One of respondent's

daughters who was present when the application was made
testified that her father said to the agent that he got $1,200
of insurance through Mr. Schumekosky when the house was
in process of construction; that he could not otherwise borrow
money to finish it; that after he got the house done he wanted
it to be in the appellant company when the other insurance
should run out. She further testified that her mother ex-
pressed surprise at the charge of $10 for the policy in ques-
tion, saying that in the other company we just had $1,200
altogether and had to pay $18. Another daughter of respond-
ent, testifying on the subject of what occurred between re-
spondent and the agent, said: "Pa said he has got insurance
on the house for $1,200, but it shall run out, but he did not
know when." The evidence was undisputed that the agent
asked the question in the written application as to whether
there was any insurance on the property, and that it was an-
swered, but that the answer was not written down. There
are some other minor evidentiary circumstances relating to
the matter, but none which materially change the situation
indicated by the foregoing.

It must be conceded that the evidence is far from being sat-
isfactory, but whether it be susceptible of conflicting reason-
able inferences is quite another matter. If it be, then the
court, upon familiar principles, properly left to the jury the
labor of drawing the proper inferences.

The contention of counsel for appellant that respondent
should be held bound by his admission made on two occasions
that he informed appellant's representatives that the previous
insurance had run out, we cannot approve in face of the evi-
dence of contrary statements made by him, and other evi-
dence somewhat supporting the latter. This court upon a
careful consideration of the matter in *Montgomery v. State,*
128 Wis. 183, 107 N. W. 14, held that an unqualified ad-
mission of a party against his interest does not preclude send-
ing the issue involved to the jury where there is credible evi-

·dence fairly conflicting therewith. It is considered here that the decision of the trial judge, who saw the witnesses and heard their testimony, should not be overruled in view of the fact that respondent testified on the two occasions when he made the admissions against his interest directly in conflict therewith, and there is some indication that he did not have a very correct idea of how to express past time as distinguished from present or future time, and the testimony of his two daughters rather supports the idea that he said to the agent that he had other insurance but did not know when it would run out. We will not discuss this branch of the case further. The trial court certainly had a much better opportunity to ·discover whether conflicting reasonable inferences could be ·drawn from the evidence than we have. There is no such clear indication of error in the conclusion reached as to warrant us in disturbing it.

It is insisted that the trial court erred in rejecting this requested instruction:

"If you find from the evidence that *Mr. Bruger* told Har- ·dell and Mr. Swanke that the prior insurance had run out, .your verdict should be for the defendant."

From what has been said the instruction was properly rejected. The effect of it was that respondent should be held bound by his evidence of statements made to appellant's representatives that the previous insurance had run out, though he may have made contrary statements and been sufficiently supported in respect thereto to warrant the jury in finding that the agent was in fact notified of the existing insurance. Moreover, it seems that the real issue in respect to the matter was fairly submitted to the jury in these words:

"Unless you are satisfied that a preponderance of the evi- ·dence establishes that information as to other insurance was given to Swanke, as claimed by plaintiff, your verdict must be for the defendant."

The jury must have understood that instruction to refer to ·existing insurance. That was the vital matter, as the whole

trend of the case clearly indicated. It must have been appreciated by the jury to be a turning point in the cause.

This instruction is claimed to have been injuriously misleading:

"In case plaintiff recovers he is entitled to recover twelve nineteenths of the value of the house destroyed, but not to exceed $1,200; three eighths of the value of the household furniture destroyed, but not to exceed $75; two thirds of the value of the family wearing apparel destroyed, but not to exceed $50, and the value of the provisions destroyed, but not to exceed $50."

There was no question, it seems, but what the limit of legitimate recovery for the provisions destroyed was two thirds of $19.21. The instruction on that branch of the case might well have been more precise, but it does not seem that the jury could have fairly gathered the idea from what the court said, under all the circumstances, that only a proportionate share of the value destroyed as to all other property but the provisions was recoverable, and that it was competent to allow him the full value thereof or of the part destroyed. It is considered that they must have taken the instruction as if it read, two thirds of the value of the family wearing apparel destroyed, but not to exceed $50, and of the value of provisions destroyed, not to exceed $50. There can be no reasonable doubt but what that is just the idea the court intended to express and which one would naturally gather from the whole instruction on the subject of damages, in view of all the circumstances. The word "of" after the word "and," making the instruction read "and of the value of the provisions," etc., seems to be in place by necessary implication.

We are unable to see from the analysis which counsel for appellant make of the total amount found by the jury, or from anything we can discover, that the jury in making up their verdict failed to allow the proper amount for destroyed provisions. Such analysis has been carefully tested by the record with the result indicated.

The next claim made is that there was no evidence to go to the jury on the question of the value of the personal property destroyed. The sworn proofs of loss were offered in evidence, and respondent testified in respect to the statement therein contained regarding the values of the destroyed personal property that it was correct. There was no objection to the competency of this evidence, in that it was not directed to the market value, nor any cross-examination showing that it was not so directed. It is considered that such evidence was proper for consideration by the jury and was sufficient to carry the case thereto on the subject to which it related.

A paper was produced claimed to be a substantial copy of the application made for the first policy. It was offered in evidence for the purpose of showing that, therein, respondent placed the value of the house at $950, whereas when the policy in suit was taken he represented it to be worth $1,800. The agent who sent the original to the insurance company testified that the copy was correct, except in some particulars not material. There was no excuse given for not producing such original, except that it was out of the jurisdiction of the court. On objection the paper was rejected. The claim is made that error was thus committed and the ruling in *Speiser v. Phœnix Mut. L. Ins. Co.* 119 Wis. 530, 533, 97 N. W. 207, is relied on. In that case there was proof that the possessor of the original was out of the jurisdiction of the court and refused to allow it to go out of the office. A deposition was therefore taken, the original paper being produced, copied, and the copy certified and attached to the deposition in lieu of the original. Under those circumstances the court held that secondary evidence was admissible. Here, as has been observed, no effort was made to obtain the original paper. Under the circumstances we are not inclined to go so far as to hold that the ruling of the trial court upon the question of competency is so clearly wrong that it should be held erroneous; that a verified copy of a paper should, at all events, be

received in evidence merely because the original is beyond the jurisdiction of the court. The better practice is, in such cases, to do as was done in *Speiser v. Phœnix Mut. L. Ins. Co., supra.* At least some fair showing should be made of efforts to obtain the use of the original, unless it is clear that they would have been fruitless. For aught that appears, the possessor of the original, upon application, would have allowed appellant the use of it. Moreover, no reason is perceived why evidence could not as easily have been made as in the *Speiser Case.* The authorities cited there do not go so far as to clearly support the offer of the copy in question. In *Bonner v. Home Ins. Co.* 13 Wis. 677, the court very clearly indicated the necessity for a much better foundation for the reception of the secondary evidence than mere proof of the original being beyond the jurisdiction of the court. In *Wis. River L. Co. v. Walker,* 48 Wis. 614, 4 N. W. 803, the same is true. There proof was made of a demand for the original and a refusal to produce or exhibit it. In 1 Jones, Evidence, § 217, it is said that in the federal court the secondary evidence is held admissible without notice to produce or effort to obtain the original where it is out of the jurisdiction of the court, but it is said that other courts hold otherwise, and that the better practice is to take the deposition of the person having possession of the original; that a copy may then be made a part of the deposition, or in case the witness refuses to produce it secondary evidence may be given. It seems that the safe practice is along the lines indicated; though we do not now hold that an effort to obtain the original or a certified copy in proceedings to take a deposition is absolutely essential. However, as indicated, there must be some foundation for receiving the secondary evidence more substantial than the mere fact that the original paper is out of the jurisdiction of the court.

Further error is claimed because the court refused to receive in evidence a pamphlet claimed to contain a copy of the

articles of organization and by-laws of appellant, for the pur-
pose of showing that they prohibited the company from insur-
ing more than two thirds of the value of any property includ-
ing the insurance of other companies.   The articles and by-
laws of the company were not incorporated in the policy nor
made a part thereof by reference, and the condition in the con-
tract did not contain the words "including the insurance of
other companies."   While it is doubtful, at least, whether
the offered evidence was admissible, it is a sufficient answer
to the assignment of error that the exclusion thereof was not
harmful, since the rule is that, in the absence of a statutory
prohibition or some rule of public policy to the contrary, the
contract of insurance, whether made with a mutual or other
company, will prevail over provisions in the articles of or-
ganization or by-laws of the insurer inconsistent therewith;
that the latter cannot invoke any such inconsistent by-law or
article to defeat a policy claim.   *Ledebuhr v. Wis. T. Co.* 112
Wis. 657, 88 N. W. 607; *Wuerfler v. Trustees Grand Grove
W. O. D.* 116 Wis. 19, 92 N. W. 433; *Koerts v. Grand Lodge
Hermann's Sons,* 119 Wis. 520, 97 N. W. 163.   In the last
case cited, as regards the efficiency of a provision of the or-
ganic law of a company to avoid a contract which was know-
ingly issued in violation thereof, the court, speaking by Mr.
Justice WINSLOW, said:

"In the absence of an absolute statutory prohibition, or a
violation of public policy, a mutual benefit society cannot de-
fend on this ground where it has knowingly issued a certifi-
cate payable to such a beneficiary, and the assured has fully
performed the contract on his part."

There is no other question presented that seems to require
special treatment.   As said at the beginning, the manner in
which the court disposed of the equitable issues we do not
deem material, since it is in harmony with the verdict which
covered the whole subject involved.

*By the Court.*—The judgment is affirmed.