JAEGER and others, Respondents, vs. GRAND LODGE OF WISCONSIN OF THE ORDER OF HERMANN'S SONS, Appellant.

*April 4—April 23, 1912.*

*Insurance: Mutual benefit societies: Reduction in benefits: Consent: Increase in dues: Retroactive by-law: Conflict between policy and laws: Discrimination between old and new members.*

1. Where a member of a mutual benefit society consented to a ten per cent. reduction in the amount of his benefit certificate, to be paid into a guarantee fund in accordance with a by-law adopted by the society, his beneficiaries cannot after his death complain of such reduction as unreasonable and void.

2. Where there is a conflict between a policy of insurance or benefit certificate and the laws of the order issuing the same the former controls.

3. An agreement by the insured, contained in his benefit certificate, that he will comply with the laws of the society then existing or which may thereafter be enacted, does not authorize the society to pass a retroactive by-law increasing for the entire period of his membership the amount of the monthly dues, which he has already paid according to the contract, and giving him the option to pay the aggregate amount of such increase in cash or suffer a reduction of the benefit by that amount. Such a by-law violates the contract of insurance and is unreasonable and void.

[4. Whether a by-law discriminating between old and new members as to rates to be paid in the future is valid, not determined.]

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This action was brought against the defendant to recover upon a benefit certificate or policy for $1,000 issued September 1, 1888. The plaintiffs recovered judgment for $363.93 damages and costs, said damages being the amount which the court below held balance due plaintiffs upon the certificate or policy. Upon the trial the defendant admitted there was due and paid over $536.07, and the judgment recovered was the difference between this amount and the face of the certificate less $100. The case was tried by the court without a jury, and the court found that the defendant made the certificate or policy September 1, 1888, to the deceased, Claus Jaeger; that said Jaeger paid all assessments levied and imposed upon him by the *Grand Lodge* for the maintenance of his certificate or policy, and did also pay all lodge dues imposed upon him and required to be paid, and at the time of his death was in all respects a member of said order in good standing; that at a regular meeting of said *Grand Lodge* in 1897 a by-law was enacted requiring every member then belonging to said order or who should subsequently join to submit to a deduction of ten per cent., or $100 of the $1,000 stipulated in his policy to be paid his beneficiary or beneficiaries upon his death, said $100 to be paid into a guarantee fund, and the remaining $900 only should be paid to the beneficiary or beneficiaries designated in said policy; that the wife of said Claus Jaeger, who was designated as beneficiary in his said policy, died at the city of Milwaukee on or about the 1st day of January, 1906; that in pursuance of a stipulation contained in said policy, said Claus Jaeger on the 27th day of February, 1906, changed the beneficiary originally named and designated his six children as beneficiaries, namely, Adolph, Carl, Henry, *Helen, Paul,* and Fred, and requested that the amount of insurance due on such policy, less ten per cent., be paid to said newly designated beneficiaries, and that such ten per cent. thereof, pursuant to the above mentioned by-law, be paid into the guarantee fund; and that a memorandum of such declara-

tion changing such beneficiaries and providing for a deduction
of ten per cent. of the amount designated in the policy to be
paid into the guarantee fund was indorsed on said policy and
subscribed by the grand secretary of said *Grand Lodge;* that
from and after said incorporation of said *Grand Lodge of .Wis-
consin of the Order of Hermann's Sons,* said defendant corpo-
ration duly assumed all the obligations of said *Grand Lodge*
which it had entered into prior to its said incorporation, and
thenceforth · and up to the time of the death of said Claus
Jaeger received and collected all the assessments payable by
said Jaeger upon said policy and all other assessments levied
upon all members of said order; that about the year 1897
said *Grand Lodge* enacted a certain by-law to meet the losses
due to the increasing death rate of members, also to the effect
that all members who should be such on and prior to the 1st
day of March, 1898, should from and after that day be re-
quired to pay for the maintenance of their respective policies
of $1,000 each certain monthly assessments, varying accord-
ing to ages attained by such members at the time of becoming
members, increasing from ages between eighteen and twenty-
five years up to ages between forty and forty-five years, and
that members who at the time they became members had at-
tained an age between forty and forty-five years should pay a
monthly assessment of $2.75; and that by said by-law it was
further provided that all members who should become mem-
bers after said 1st day of March, 1898, should be required to
pay on policies of $1,000 lower monthly assessments, which
also varied and increased between the ages of eighteen and
twenty-five years up to between forty and forty-five years, and
that all persons who at the time of becoming members had at-
tained an age between forty and forty-five years should pay
a monthly assessment of $2.04; that said Claus Jaeger be-
came a member of Robert Blum Lodge No. 4 in 1879, and was
then forty-four years of age, and from and after March 1,
1898, paid for the maintenance of his policy a monthly as-

sessment of $2.75 up to the time of his death, all of which assessments were duly paid to said *Grand Lodge;* that said Jaeger died on the 3d day of January, 1910, and at the time of his death was a member in good standing of said Robert Blum Lodge No. 4; that on the 11th day of January, 1910, due notice of the death of said Claus Jaeger was given in writing to said *Grand Lodge,* and more than ninety days expired before the commencement of this action; that on the 26th day of March, 1910, Adolph Jaeger, Carl Jaeger, Henry Jaeger, and Fred Jaeger, four of the beneficiaries designated in the policy, did, for value received, duly assign and transfer to plaintiff *Gustav Jaeger* all their right, title, and interest in said policy and in and to said sum of $1,000 mentioned therein, and ever since said *Gustav Jaeger* has been and still is the owner of an undivided four-sixths of said policy and the money thereby secured; that the plaintiffs *Paul Jaeger* and *Helen Jaeger,* two of the beneficiaries designated, are minors, and are still the owners of an undivided one-sixth each of said policy; that upon proceedings duly had in the county court of Milwaukee county said *Gustav Jaeger* was on the 9th day of April, 1910, duly appointed general guardian of the above named minors, and letters of guardianship were duly issued, and said *Gustav Jaeger* ever since has been and still is the general guardian of said minors; that the defendant *Grand Lodge* has in its possession a reserve fund exceeding $20,000; that before the commencement of the trial of this action said defendant paid to the plaintiffs $536.07, the amount admitted to be due upon said policy, without prejudice to the rights of plaintiffs to continue said action for the sum of $463.93 and interest thereon, denied by defendant to be due; that at its annual session in August, 1909, said defendant adopted an amendment to its by-laws to the effect that all members of said order who were such prior to the 1st day of March, 1898, should be advanced to their attained age as of that date, or in lieu thereof be given the following options: First, the privi-

lege of paying in cash the amount they ought to have paid into the benefit fund had they been charged the present table of rates from the time they were initiated into the order to the 1st day of March, 1898, to wit: that they should be charged one payment a month at the age at which they were initiated at the rate provided by the present table of rates, against which they should be credited with the amount they actually paid during that period of time, and the balance should be the deficiency; second, that said members may have said deficiency charged against their benefit certificate with two and one-half [per cent.] simple interest so long as the same remains unpaid, with accrued interest thereon, which deficiency, with interest at the time of the death of said member, should be deducted from the face of his benefit certificate, and that said by-laws should apply only to members who were initiated into the order before March 1, 1898; that pursuant to the above by-laws the grand secretary of said defendant did about September, 1910, compute the amounts of said alleged deficiencies to be charged against the respective policies of members who joined before March 1, 1898, and that the amount so computed as a deficiency against the policy of Claus Jaeger was $363.93; and that said secretary issued a printed circular in which each member was requested to signify his choice whether he would pay the deficiency in cash, or would suffer the same to be deducted, with two and one-half per cent. interest, from the amount of his policy at his death; that said Claus Jaeger never acquiesced in said amendment and did not manifest any choice as to whether he would pay cash or suffer the same to be deducted from the amount of his policy; that before the commencement of this action the plaintiffs duly demanded of defendant payment of the amount of $1,000 named in the policy, which payment was refused.

The court concluded that said by-law of 1897, which required every member then belonging to said order and every future member to submit to a deduction of ten per cent., or

$100, at his death from his $1,000 policy, to be paid into a reserve fund, and that only the remaining $900 should be paid to the beneficiary or beneficiaries of such policy, was and is unreasonable and void as to said Claus Jaeger and all members who joined said order prior to the passage of said law, but that since, in and by the written declaration made by said Claus Jaeger for the substitution of said six children as beneficiaries in lieu of his wife, who had died, he requested that ten per cent., or $100, of the amount of the policy be deducted from such policy and paid into the reserve fund of said *Grand Lodge,* he, said Claus Jaeger, consented to such deduction and thereafter was, and these plaintiffs now are, estopped from questioning or disputing the right of the *Grand Lodge* to deduct said $100 from the amount of said policy; that said amendment of its laws enacted by said defendant at its session in 1909, to the effect that each member of said order who had joined prior to the 1st day of March, 1898, should be required to pay the difference between the total amount of assessments he had paid from time of initiation to said 1st day of March, 1898, and the amount which he would have paid had he paid the highest rate of assessment then payable by him according to the then present rates of assessments, or to suffer such deficiency to be deducted from the amount of his policy with two and one half per cent. interest added at the time of his death, was and is unreasonable and void; that there is now due and owing from the said defendant to the plaintiffs the sum of $363.93, with interest thereon from the 12th day of April, 1910.

Judgment was entered in accordance with the findings of fact and conclusions of law, from which this appeal was taken.

For the appellant there was a brief by *O'Connor, Schmitz, Wild & Gross,* and oral argument by *A. L. Schmitz.*

For the respondents there was a brief by *Scheiber & Orth,* and oral argument by *C. A. Orth.* They cited *Wuerfler v. Trustees Grand Grove,* 116 Wis. 19, 92 N. W. 433; *Ledebuhr*

*v. Wis. T. Co.* 112 Wis. 657, 88 N. W. 607; *Bruger v. Princeton & St. M. Mut. F. Ins. Co.* 129 Wis. 281, 109 N. W. 95; *Baumann v. Metropolitan L. Ins. Co.* 144 Wis. 206, 128 N. W. 864; *Langan v. Supreme Council,* 174 N. Y. 266, 66 N. E. 932; *Beach v. Supreme Tent,* 177 N. Y. 100, 69 N. E. 281; *Weber v. Supreme Tent,* 172 N. Y. 490, 65 N. E. 258; *Hale v. Equitable Aid Union,* 168 Pa. St. 377, 31 Atl. 1066; *Newhall v. Supreme Council,* 181 Mass. 111, 116, 63 N. E. 1; *Gaut v. Supreme Council,* 107 Tenn. 603, 64 S. W. 1070, 55 L. R. A. 465, 470; and other cases.

KERWIN, J. The facts in this case as found by the court are undisputed. They appear in the foregoing statement of the case.

Error is assigned upon the conclusions of law. We are reminded by the learned counsel for appellant of the great importance of the principles involved in this case to fraternal societies generally, and we approach the consideration of the case fully conscious of the fact that the legal principles involved are far reaching in their importance to all fraternal associations.

The deceased, Claus Jaeger, became a member of the lodge in 1879 and continued to 1888, when under a new arrangement the certificate under consideration was issued, by the terms of which the defendant promised to pay $1,000 to the beneficiaries provided for upon the death of said Claus Jaeger, and the said Claus Jaeger, by the terms of said certificate, promised to "comply with the laws, rules and regulations now governing this order and its beneficiary fund, and with all such as may hereafter be enacted to govern said order and fund." The deceased paid all dues and complied with all rules, regulations, and by-laws except that he refused to agree to the $100 deduction from the face of his policy by the by-law of 1897, and also refused to comply with another by-law, passed in 1909, giving two options, one to pay a sum in gross

to be ascertained by advancing his payments from the time he entered from $1.60 per month to $2.75 per month, and charging the difference upon the policy or certificate, or by deducting such amount from the face of the policy when paid, as more fully appears from the statement of facts. The effect of this by-law, as will be seen by examination of the facts found, was to scale down the certificate or policy by charging up from the time the deceased obtained his certificate in 1888 a sum aggregating $363.93, together with $100 ordered deducted by the first by-law above referred to, making a total cut from the face of the certificate of $463.93. But, as found by the court below on sufficient evidence, the deceased consented at the time of change of beneficiaries to the $100 cut, therefore the plaintiffs cannot complain on that account.

The main question, therefore, for determination is whether the defendant could charge the $363.93 against the certificate in suit. The court below held that it could not, and that such amount was due to plaintiffs in addition to the $536.07 tendered by defendant. The case turns upon the power of the defendant to pass the by-law under which it claims the right to impose the burden upon its members. It will be remembered that the burden imposed upon deceased and his certificate or policy is a charge of $2.75 per month from the time of the issuance of the certificate up to 1909, less the amount which he had paid during that time after deceased had paid the regular dues imposed by the defendant up to that time, namely, $1.60 per month. The effect of the by-law is to take, as we have seen, $363.93 out of the $900 due on the policy by a retroactive cut after deceased had paid the dues imposed and complied with all the rules and regulations of the defendant from the time of issuance of the certificate until 1909, a period of over twenty years. The appellant's claim is that the provision in the certificate to the effect that the deceased will comply with all by-laws then existing or which may be subsequently passed gives such right, and several authorities are

cited which it is claimed support the contention. We shall briefly refer to those chiefly relied upon by appellant.

*Borgards v. Farmers' Mut. Ins. Co.* 79 Mich. 440, 44 N. W. 856, was a case limiting liability in the future in case of loss by sparks escaping from a steam engine used in threshing grain.

*Sargeant v. Supreme Lodge,* 158 Mass. 557, 33 N. E. 650, has reference to change of beneficiaries.

*Stohr v. San Francisco M. F. Soc.* 82 Cal. 557, 22 Pac. 1125, held that a by-law passed limiting benefits after continuous payments for six months was valid. The by-law clearly related to future benefits and referred to a matter over which the company had control and power to limit payments by by-law, and in no way violated any contract relations between the parties, because permission to do what was done and change the by-law in that regard was a part of the contract, and it was said in the case that the change could not be retroactive. The contract was held to mean that in case of sickness the member is to receive payments, subject to the power of defendant to change the provision authorizing such payments so far as future payments are concerned.

*Parish v. New York P. Exch.* 169 N. Y. 34, 61 N. E. 977, holds that a by-law diverting a fund from the purpose specified in the charter is unreasonable and void, because an attempt to divert the fund to a different purpose after the fund had been accumulated by payments for a series of years. The case is not in favor of appellant's position, but rather against it.

*Supreme Commandery v. Ainsworth,* 71 Ala. 436, holds certificate to be a contract not subject to impairment, but accepted subject to the laws of the order then in force or thereafter enacted, but was silent on the question of suicide; and it was further held that a by-law enacted after the issuance of certificate, declaring it void if the member should take his own life, was valid.

*Caldwell v. Grand Lodge,* 148 Cal. 195, 82 Pac. 781, re-
lates to change of beneficiaries, and it was held that where the
original by-law allowed any person to be named by a member
as beneficiary, a change in the by-laws requiring one to be
designated as a member of the family or related by blood, or
"who shall be dependent upon him," is reasonable.

*Supreme Lodge v. Kutscher,* 179 Ill. 340, 53 N. E. 620, is
a case holding that a by-law forfeiting claim for the death of
a member by suicide or intoxication is reasonable and bind-
ing upon a member joining before its passage who contracts
to be bound by subsequent by-laws.

*Fullenwider v. Supreme Council,* 180 Ill. 621, 54 N. E.
485, involves right to change rate of assessment by subsequent
by-law.   It does not appear, as we understand the opinion,
that the subsequent by-law had any retroactive effect; more-
over the case is ruled by a bare majority, three judges dissent-
ing.

*Olson v. Court of Honor,* 100 Minn. 117, 110 N. W. 374,
is where a by-law passed subsequently to the issuance of cer-
tificate limiting the benefit, in case of suicide, to five per cent.
of the face of the certificate for each year during continuance
of membership in the society, was held unreasonable and void
as to existing members.   This authority is against appellant's
contention.

Counsel for appellant also cites the following Wisconsin
cases: *Schmidt v. Supreme Tent,* 97 Wis. 528, 73 N. W. 22,
which is a case where the subsequent by-law was against pro-
hibited occupation.   *Hughes v. Wis. O. F. Mut. L. Ins. Co.*
98 Wis. 292, 73 N. W. 1015, is where there was a subsequent
by-law against suicide, rendering the policy void.   *Loeffler v.
Modern Woodmen,* 100 Wis. 79, 75 N. W. 1012, is where
there was a by-law against entering into a prohibited business.
*Thomas v Covert,* 126 Wis. 593, 105 N. W. 922, seems to be
against appellant's contention, because it recognizes the rule
that an agreement or certificate similar to the one in question

must in terms or by implication authorize the change in the contract, otherwise the subsequent by-law effecting such change is void.

A careful examination of the foregoing cases will show that they are not controlling in favor of the appellant and some of them are against appellant's contention. The case of *Wuerfler v. Trustees Grand Grove,* 116 Wis. 19, 92 N. W. 433, rules the instant case. That case is so strongly in point both on facts and upon principles enunciated that we quote at length from the opinion. At page 26 the court said:

"Respondent did not possess unlimited authority to change its plan of insurance, giving the change retroactive effect, under the reserve power, made a part of the insurance contract, to make changes in the rules, by-laws, and regulations of the order. Such a reserve power is held to warrant only reasonable variances of insurance contracts,—variances required, in the judgment of the order, in those matters of detail necessary or advisable in carrying out efficiently the fundamental principle or scheme of insurance, not changes destroying it. Obviously, changes in the by-laws, rules, and regulations regarding the execution of a plan of insurance are quite different from changing the plan itself and nullifying all contracts entered into under it, as was done in this case. The essential features of the plan of insurance here were that each certificate holder's beneficiary should receive $1,000 upon and at the maturity of his contract, and that a fund should be accumulated by assessments upon the membership in the order sufficient for that purpose. The way was undoubtedly open for the order to make reasonable changes respecting the hazards members might subject themselves to, and in regard to the number and amount of the assessments, the time of payment thereof, the effect of default in such payment, the notice required of assessments to put members in default, and many other matters of detail that might be mentioned. But after a member had paid assessments for a long period of time, contributing to accumulate money to meet the matured obligations of $1,000 each to beneficiaries, a change in the constitution of the order (the word 'constitution' is here used as synonymous with 'by-laws') rendering the certificate at ma-

turity, instead of worth $1,000, worth an indefinite amount and probably not half that sum, cannot seriously be considered a reasonable change in rules, regulations and by-laws as regards existing contracts."

This court has held that where there is a conflict between the policy and the laws of the order, the policy controls. *Ledebuhr v. Wis. T. Co.* 112 Wis. 657, 88 N. W. 607; *Bruger v. Princeton & St. M. Mut. F. Ins. Co.* 129 Wis. 281, 109 N. W. 95.

The change attempted to be made here by deducting $363.93 from the policy amounted to an abrogation of the contract. In *Langan v. Supreme Court,* 174 N. Y. 266, 66 N. E. 932, the benefit certificate had been issued for $5,000 on the death of plaintiff. After plaintiff had become a member, the by-laws were amended so that on the death of plaintiff only $2,000 should be paid. In an action involving the validity of such amendment the court said:

"The action of the defendant, in the attempted amendment of the by-law, which was in force when the plaintiff joined the association and received his certificate, was wholly ineffectual to deprive him of any rights which had become vested. It was beyond the power of the defendant to affect the obligation expressed in the certificate, without the consent of its holder."

To the same effect are *Beach v. Supreme Tent,* 177 N. Y. 100, 69 N. E. 281; *Weber v. Supreme Tent,* 172 N. Y. 490, 65 N. E. 258; *Hale v. Equitable Aid Union,* 168 Pa. St. 377, 31 Atl. 1066.

In *Newhall v. Supreme Council,* 181 Mass. 111, 63 N. E. 1, an attempt was made, by the adoption of a subsequent by-law, to cut the amount of the certificate from $5,000 to $2,000, and, although the usual promise was contained in the certificate to comply with subsequent by-laws, it was held that the full sum mentioned in the certificate, $5,000, could be recovered. See, also, *Gaut v. Supreme Council,* 107 Tenn. 603, 64 S. W. 1070, 55 L. R. A. 465, where it was held that an

agreement by the holder of a benefit certificate to be governed by laws subsequently enacted does not authorize the reduction of the benefit called for in the certificate after payment has been made for years on original value.

We are of opinion that the by-law making the rebate from the policy of $363.93 was unauthorized and void.   The by-law making the ten per cent. cut, or $100 on the $1,000 certificate, was assented to by deceased when he made the change of beneficiaries and cannot be questioned here.

Some other questions are raised by respondents which they claim are sufficient to defeat the appellant, on the ground that the by-laws referred to are unreasonable because all members, new and old, were not put upon the same basis as to rates. On this point attention is called to the following authorities in addition to those already cited: *Strauss v. Mutual R. F. L. Asso.* 126 N. C. 971, 36 S. E. 352, 54 L. R. A. 605 ; *Benjamin v. Mutual R. F. L. Asso.* 146 Cal. 34, 79 Pac. 517 ; *Ebert v. Mutual R. F. L. Asso.* 81 Minn. 116, 83 N. W. 506, 834, 84 N. W. 857.   Whether this last contention as to discrimination between old and new members as to rates in the future is sufficient to defeat the by-law making new rates, independent of the retroactive cut on old members, we need not and do not decide, because the by-law scaling down the certificate by a rebate of $363.93 cannot be upheld, and the by-law attempting to accomplish such purpose is unauthorized under the contract and void.   The judgment of the court below, therefore, is right and must be affirmed.

*By the Court.*—The judgment is affirmed.